UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MEURIS PETERKIN,

                              Plaintiff,

                v.

DETECTIVE DOUGLASS CARR and POLICE
OFFICER JOSE ALBARRACIN,

                              Defendant.

**MEMORANDUM AND ORDER**
20-CV-524 (LDH) (TAM)

---

LaSHANN DeARCY HALL, United States District Judge:

    Meuris Peterkin ("Plaintiff"), proceeding pro se, brings this instant action against Detective Douglass Carr and Police Officer Jose Albarracin (collectively "Defendants") pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. Defendants move pursuant to Rule 56 of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety.

**UNDISPUTED FACTS**[1]

    On August 27, 2018, Plaintiff's cousin-in-law, Sadier Emmanus, contacted police to report that Plaintiff had threatened her. (Pl.'s Statement of Material Facts Pursuant to Local Civ. R. 56.1 ("Pl.'s 56.1") ¶ 1, ECF No. 61.) Specifically, Emmanus complained that she feared for her safety because Plaintiff told her "you have it coming to you" and followed her as she tried to get away from him. (*Id.*) Thereafter, on October 7, 2018, Emmanus filed a report at the 77th Precinct, reporting another incident with Plaintiff that occurred earlier that same day. (*Id.* ¶

---

[1] The foregoing facts are undisputed unless otherwise noted. Further, facts that were not contradicted by citations to admissible evidence are deemed admitted. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

1

2.) Emmanus complained that as she moved her car out of a driveway, Plaintiff began "throwing remarks" at her and then went back into his home. (*Id.* ¶¶ 2, 7.) Plaintiff returned with a sharp object in his hand and chased Emmanus as she tried to drive away. (*Id.*) Subsequently, Defendant Carr, a domestic violence investigator, was assigned as the lead detective to investigate Emmanus's complaint. (*Id.* ¶ 3.) Thereafter, Defendant Carr reviewed the Complaint Report and Domestic Incident Reports related to the October 7, 2018 incident and interviewed Emmanus concerning the same. (*Id.* ¶ 4, 7–8.) During the interview, Emmanus confirmed the information in her complaint and informed Detective Carr of the August 27, 2018 incident. (*Id.* ¶¶ 7–8.) Defendant Carr also reviewed Plaintiff's August 27, 2018 complaint report, which indicated that Plaintiff's threatening behavior had "been going on for a while" and that Plaintiff had sent Emmanus "threatening" text messages. (*Id.* ¶ 9.)

On October 11, 2018, Plaintiff called 911 to report that his then-wife, Toneana Charles, and their son were missing from their apartment, and that he suspected the two went to Charles's mother's apartment located at 1045 St. John's Place in Brooklyn (the "St. John's Apartment"). (*Id.* ¶ 10.) At about 12:04 a.m., on October 12, 2018, Defendant Albarracin and his partner, Officer Elias Wallen, received a "radio run" reporting a domestic dispute between a female 911 caller and her son-in-law at the St. John's Apartment. (*Id.* ¶ 11.) Defendant Albarracin and Officer Wallen arrived at the St. John's Apartment, where Ms. Charles reported that after she and her son left their residence in fear of Plaintiff, Plaintiff followed them to her mother's home. (*Id.* ¶¶ 12–13.) According to Plaintiff, he was asked to leave the premises by Defendant Albarracin, which he did. (Defs.' Reply Statement of Material Facts Pursuant to Local Civ. R. 56.1 ("Reply 56.1") ¶ 20, ECF No. 64.)

On October 14, 2018, Emmanus positively identified Plaintiff as the subject of her previous complaint. (Pl.'s 56.1 ¶¶ 19–21.) That same day, at approximately 4:00 p.m., Plaintiff was arrested at his home by Defendants Carr and Albarracin and Plaintiff was transported to the 77th Precinct by Defendant Carr. (*Id.* ¶¶ 22–23.) Defendant Carr did not continuously supervise Plaintiff after his arrest and last interacted with him at approximately 7:50 p.m. on October 14, 2023. (*Id.* ¶¶ 24–25.) Plaintiff remained at the 77th precinct for approximately eight hours, without being fed or offered a meal. (Reply 56.1 ¶ 9.) At approximately 11:30 p.m., Plaintiff was transported from the 77th Precinct to Brooklyn Central Booking. (*Id.* ¶ 14.) At approximately 11:20 a.m., on the next day, Plaintiff was arraigned and released on his own recognizance. (Pl.'s 56.1 ¶ 27.) Plaintiff was in custody for a total of 19 hours and 20 minutes. (*Id.* ¶ 28.) He was not provided any food during this time. (Pl.'s 56.1 ¶¶ 26, 28; Reply 56.1 ¶¶ 9, 14.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise

3

a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in her favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts, *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

"It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and emphasis omitted), including when facing a summary judgment motion, *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003). Nevertheless, the "application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Id.* at 50 (internal quotation marks omitted).

## DISCUSSION[2]

### I.     Plaintiff's False Arrest Claim

Defendants argue that Plaintiff's false arrest claim must be dismissed because the arrest was premised on probable cause. (Defs.' Mem. L. Supp. Mot. Dismiss ("Defs.' Mem.") at 5, ECF No 60.) The Court agrees.

"To state a claim for false arrest under New York law, a plaintiff must show that '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" *Savino v. City of New York*, 331 F. 3d 63, 75 (2d Cir. 2003) (quoting *Bernard v.*

---

[2] Plaintiff attempts to assert additional legal claims in his memorandum in opposition to Defendants' motion for summary judgment. However, these claims may not be asserted at this stage. Accordingly, the Court declines to address these claims or any related arguments. (Plaintiff's Opposition Memorandum at 10.)

*United States*, 25 F.3d 98, 102 (2d Cir. 1994)). However, it is well settled that "the existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). Probable cause for an arrest exists when a police officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *see also Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013). To decide whether probable cause existed at the time of the arrest, the Court assesses "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly*, 439 F.3d at 153. This information, of course, may include a law enforcement "information from some person, normally the putative victim or eyewitness." *Wieder v. City of New York*, 569 F. App'x 28, 29 (2d Cir. 2014) (quoting *Panetta v. Crowley,* 460 F.3d 388, 395 (2d Cir.2006)); *see also Miloslavsky v. AES Eng'g Soc., Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 1534 (2d Cir. 1993) ("The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed.").

Here, prior to Plaintiff's arrest, Plaintiff's cousin-in-law Sadier Emmanus, filed two reports complaining of menacing and harassment. Subsequently, prior to Plaintiff's arrest, Emmanus identified Plaintiff to Detective Carr as the subject of her reports. (Defs.' Mem. at 3; Pl.'s 56.1 ¶ 19.) In other words, Emmanus, the putative victim gave a law enforcement officer information, from which he could reasonably believe that Plaintiff had committed the crime of harassment. Nothing more is required.

Plaintiff argues, nonetheless, that the claim should survive because Defendants did not "provide any admissible evidence such as a search warrant, summons or transcript from the 911

Dispatch Call Center to establish probable cause." (Pl.'s Mem. Opp'n Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 63 at 13.) This argument is baseless. Simply put, the law does not require that probable cause be premised upon evidence that might later be admissible at trial. *See Mara v. Rilling*, 921 F.3d 48, 75 (2d. Cir. 2019) (observing that "evidence need not be admissible at trial in order to support a finding of probable cause") (quoting *Stansbury v. Wertman*, 721 F. 3d 84, 91 n.7). Equally without merit is Plaintiff's argument that the reports upon which Detective Carr relied were "stale, fixed and false reports which has no basis, bares a name other than [Plaintiff's] own, and many more inconsistencies, irrelevant to this cause of action." (Pl.'s Opp'n at 13.) At bottom, none of Plaintiff's arguments operate to defeat probable cause, and his claim for false arrest must be dismissed.

## II.     Plaintiff's Deprivation of Food Claim[3]

To establish a violation of the Fourteenth Amendment's Due Process Clause for deprivation of food and water, plaintiff must satisfy two prongs— "an objective prong showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong' . . . showing that the officer acted with at least deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Indeed "there is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)). Under the objective prong, the gating question, therefore, is

---

[3] Finding that Plaintiff's claims for false arrest and deprivation of food cannot stand, the Court declines to reach Defendants' qualified immunity argument. Even if the Court had not dismissed Plaintiff's claims, the claims against Defendant Albarracin are ripe for dismissal for lack of personal involvement. "It is well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010).

6

whether the challenged conditions "pose an unreasonable risk of serious damage to his health." *Id.*

Here, Plaintiff was in custody for a total 19 hours and 20 minutes. (Pl.'s 56.1 ¶ 28.) During this time, it is undisputed that he was not provided with food. (Reply 56.1 ¶¶ 9, 14; Pl.'s 56.1 ¶¶ 26.) It is also undisputed that Plaintiff never requested food. (Pl.'s 56.1 ¶¶ 26.) In any event, Plaintiff does not offer any evidence that he suffered any harm resulting from the complained of deprivation. Indeed, the only harm Plaintiff has identified could only be reasonably related to his claim for false arrest. (Reply 56.1 ¶ 30.)[4] On these facts, Plaintiff fails to establish a claim for deprivation in violation of the Fourteenth Amendment and the case must be dismissed accordingly.[5] *See Lynch v. City of New York*, 952 F.3d 67, 77 (2d Cir. 2020) (granting motion to dismiss where Plaintiff failed to allege that he "request[ed] or had any need for food, drink, or access to a bathroom," or that the lack of accommodations "had any untoward consequences whatsoever.").

---

[4] In Plaintiff's statement of additional facts, he asserts that "[a]s a result of the illegal actions of Detective Douglas Carr, Adam Mc. Lawhorn, Brian Duffy and Jose Albarracin. I was publicly embarrassed, maliciously prosecuted, unable to work, became homeless, suffered a major depressive disorder and post traumatic symptoms disorder, unable to provide adequate care and protection for my children. My wife who waited six years to reunite with me filed for divorce, my daughter broke her knee, my son got robbed at knife point on his way to school. To date my name as well as that of my children remain in the Statewide Central Register as neglected father and children. The actions of those Police Officers have completely ruined my life." (Defs.' Reply 56.1 ¶ 30.) Defendants properly dispute this fact on the basis that it is not supported with a citation to any record evidence. (*Id.*)

[5] Although on a motion to dismiss, this case is not altogether unlike *Mason v. Besse*, No. 20-CV-246 (KAD), 2021 WL 1248388 (D. Conn. Apr. 5, 2021). In *Mason*, the plaintiff alleged that an officer placed him in a cell for fourteen hours without heat, a mattress, blanket, toilet paper, food, or clean drinking water. *Id.* at *6. The plaintiff suffered from kidney cancer and alleged that the conditions of his confinement caused him emotional and physical discomfort. *Id.* Despite these allegations, the district court concluded that the plaintiff failed to satisfy the objective prong set forth in Darnell because he did not allege that the conditions "posed a substantial risk of harm to his health." *Id.* The same outcome is warranted here.

## CONCLUSION

For the foregoing reasons Defendants' motion for summary judgment is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York  
       March 29, 2024

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge